**In re Larry M. PAULSON, Debtor.**

**Larry M. PAULSON, Plaintiff,**

**v.**

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 83–0219 JLC. Adv. No. 92–153.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 15, 1992.

John P. Vetica, Jr., Pittsburgh, PA, for debtor.

Donna J. Pankowski, Pittsburgh, PA, Richard I. Miller, Tax Div., U.S. Dept. of Justice, Washington, DC, for the I.R.S.

Thomas W. Corbett, Jr., Robert L. Eberhardt, Pittsburgh, PA, U.S. Attorney's Office.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

The matter before this court is Larry M. Paulson's ("Debtor") liability to the Internal Revenue Service ("IRS") for assessed tax liabilities, penalties, and post-petition interest.

### I. FACTS

On November 10, 1983, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case was converted to Chapter 7 on October 3, 1984. On May 4, 1990, the Debtor was granted a discharge.

The IRS made assessments against the Debtor for unpaid employment and withholding tax liabilities ("Form 941") for the following pre-petition tax periods: second, third and fourth quarters of 1979; fourth quarter of 1980; first, second, and third quarters of 1981; all four quarters in 1982; and the first quarter of 1983. In addition, the IRS assessed a Form 941 liability against the Debtor for the fourth quarter of 1983, which quarter was partially pre-petition and partially post-petition. The Form 941 liabilities for each quarter can be segregated into two types of tax liabilities: "trust fund" and "non-trust fund." "Trust fund" liabilities refer to those taxes that are collected or withheld by the employer on behalf of the employee.[1] "Non-trust fund" liabilities are those taxes directly attributable to the employer.[2]

As of May 7, 1992, the IRS also made a total of $26,243.16 in assessments against the Debtor for unpaid federal unemployment taxes ("Form 940") for the following pre-petition periods: 1980, 1981, 1982, and 1983. (A small portion of the 1983 liability accrued post-petition.)

In addition to the underlying tax assessments, the IRS has assessed against the Debtor a claim for pre-petition interest and penalties regarding all of the liabilities listed above. Further, the IRS asserts that additional interest has accrued on all of these accounts, both during and after the bankruptcy, although that interest has not yet been assessed against the Debtor.

The bulk of the base tax liabilities of the Debtor, principally Forms 941 for the last quarter of 1980, the first, second and third quarters of 1981, all four quarters in 1982, and the first and second quarters of 1983, and the Forms 940 for the tax periods 1980, 1981, 1982 and 1983 were all due to be filed within three years prior to the filing of the bankruptcy petition.

The IRS concedes that the liabilities of the Debtor for the non-trust fund taxes due on the Form 941 liabilities for the second, third, and fourth quarters of 1979, and the applicable interest thereon, were discharged on May 4, 1990, because those liabilities were not priority taxes under 11 U.S.C. § 507(a)(7)(D). The IRS further concedes that the penalties attributable to the Form 941 liabilities for the second, third, and fourth quarters of 1979 were also discharged on May 4, 1990. Finally, the IRS acknowledges that its tax claim was unsecured during the bankruptcy proceeding. Liens were entered subsequent to the entry of the discharge order.

### II. ANALYSIS

1. **Were all "non-trust fund" portions of the Debtor's Form 941 liabilities discharged?**

The Debtor contends that all "non-trust fund" portions of the Form 941 liabilities were discharged pursuant to his May 4, 1990 discharge. The Debtor argues that 11 U.S.C. § 507(a)(7)(C) controls the dischargeability of the non-trust fund portions. He further asserts that although § 507(a)(7)(C) provides exception from discharge for those taxes "required to be collected or withheld," his "non-trust fund" liabilities do not fall within this exception. The Debtor believes that "non-trust fund" taxes, by their definition, are not collected or with-

---

**1.** With interest accruals computed through July 6, 1992, the IRS has assessed $163,418.09 in trust fund Form 941 liabilities against the Debtor.

**2.** With interest accruals computed through July 6, 1992, the IRS has assessed $35,554.28 in non-trust fund liabilities against the Debtor.

held by the employer, and thus fall outside of the scope of the § 507(a)(7)(A) discharge exception.

■ Section 727(b) of the Bankruptcy Code excepts from the effect of discharge those items enumerated in 11 U.S.C. § 523. Section 523(a)(1)(A) provides that a discharge under section 727 does not discharge taxes "of the kind and for the periods specified in section ... 507(a)(7)." While the Debtor is correct in his assertion that the "non-trust fund" portions of the liability do not fall within the scope of the section 507(a)(7)(C) exception, the Debtor fails to consider § 507(a)(7)(A), which states as follows:

§ 507. Priorities.

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

In accordance with § 523(a)(1)(A), employment taxes on wages, salaries or commissions are not dischargeable.

In the case of *In re Ndosi*, 116 B.R. 687, 690 (Bkrtcy.D.Minn.1990), the bankruptcy court ruled that § 507(a)(7)(D) applies exclusively to employment taxes on wages, salaries and commissions earned from the debtor. Because the "non-trust fund" portions of the Debtor's Form 941 liabilities are based on wages earned from the Debtor, this court holds that the Debtor remains liable to the IRS for those Form 941 liabilities that were based on returns due within three years prior to the filing of the petition. *See, Matter of Pierce*, 935 F.2d 709 (C.A. 5 1991).

**2. Were the penalties assessed against Debtor for the Form 940 and 941 liabilities discharged?**

The Debtor contends that the tax penalties assessed against him in regard to the Form 940 and 941 liabilities were discharged. The Debtor relies on 11 U.S.C. § 507(a)(7)(G) (as referenced indirectly in § 523(a)(1)(A)) which grants priority to penalties "related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." The Debtor further asserts that the penalties in the instant case are punitive[3] and thus fall outside of the § 507(a)(7)(G) priority status. The Debtor concludes that, because the penalties never received priority status, they were discharged.

■ As previously stated, § 523(a)(1)(A) specifically provides "exceptions· to discharge ... for a tax or a customs duty of the kind and for the periods specified in § 507(a)(2) or § 507(a)(7)...." Section 507(a)(7)(G) provides priority status for "pecuniary" taxes. Therefore, the Debtor is correct in asserting that a punitive penalty does not receive priority treatment. The court in *In re Healis* held:

Inasmuch as the IRS has assessed interest and penalties against the debtors in this case, we can only presume without evidence to the contrary that those penalties are intended to be punitive in nature. As such, no requirement for priority payment exists for these penalties.

*In re Healis*, 49 B.R. 939, 942 (Bkrtcy. M.D.Pa.1985).

■ Nevertheless, the lack of a priority of a tax penalty under § 507(a) does not necessarily cause such penalty to be discharged, unless an exemption from discharge is found somewhere else in the Bankruptcy Code. The court in *In re New England Carpet Co., Inc.*, 26 B.R. 934 (Bkrtcy.D.C.Vt.1983), after determining that a punitive penalty lacked priority sta-

---

**3.** The parties have impliedly stipulated that all tax penalties in the instant case are punitive.

The IRS's proof of claim supports this assertion.

tus under § 507(a)(7)(B) [4] held that "[t]he lack of priority [however,] does not alter the propriety of the penalty. As such, the court has determined pursuant to section 505(a)(1) that the penalties as assessed by the City of Winooski are assessed in the proper amounts." *Id.* at 937.

■ Under the Bankruptcy Code, the nondischargeability of tax penalties is explained in § 523(a)(7), which states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

Under § 523(a)(7), those tax penalties assessed against the Debtor in the instant case which were due after November 10, 1980 are nondischargeable because they satisfy all three of the § 523(a)(7) requirements for nondischargeability:

(1) they are not compensation for actual pecuniary loss [5] (*see McKay v. U.S.*, 957 F.2d 689, 693 (C.A. 9 1991).

(2) they are related to taxes specified in § 523(a)(1), specifically those enumerated

in § 507(a)(7)(C) and (D), or taxes which are otherwise nondischargeable (*see In re Burns*, 887 F.2d 1541, 1544 (C.A. 11 1989); and

(3) they were imposed with respect to a transaction that occurred within three years before the date of the filing of the petition (*see McKay, supra; In re Burns, supra; In re Roberts*, 906 F.2d 1440 (C.A. 10 1990).

Thus, it is determined that the Debtor is liable to the IRS for all Form 940 and 941 tax penalties assessed on tax returns due after November 10, 1980.

### 3. Is the IRS entitled to post-petition interest on its claim?

■ The most contested issue in this case is whether the IRS is entitled to post-petition interest. In the Supreme Court decision, *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), the court considered the same issue presented here; however, its result was based on the Bankruptcy Act and not the Code.

The Debtor asserts that the *Bruning* case, which held that post-petition interest is collectable on a nondischargeable tax liability, is inapplicable to cases decided under the Bankruptcy Code. The Debtor points out that the *Bruning* decision was wholly based on sections 17 and 63 of the 1898 Bankruptcy Act, which, working together, made nondischargeable both "tax" and "nonprovable" debts.[6]

The leading case concerning the nondischargeability of interest is *Hanna v. U.S.*,

---

4. Prior to amendment, that clause, now designated as § 507(a)(7)(D), had been designated as § 507(a)(6)(D).

5. The *McKay* rule appears to conflict with the rule determined by section 523(a)(1)(A) and section 507(a)(7)(G), which provides that pecuniary tax penalties receive priority and are thus nondischargeable (*see In re Healis*). Nevertheless, the issue here is the *nondischargeability of punitive tax* penalties not the *priority* of punitive tax penalties or the nondischargeability of *pecuniary* tax penalties. This court holds that section 523(a)(7) clearly addresses the relevant issue of the nondischargeability of punitive tax penalties, regardless of their nonpriority status under section 507(a)(7)(G).

6. Section 17 provided:

§ 17 *Debts Not Affected by Discharge*
A discharge in bankruptcy shall release a bankrupt from *all of his provable debts*, except such as (1) are due as a tax levied by the United States. . . .
Section 63 provided:
§ 63 *Debts Which May Be Proved*
. . . .
(1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition . . . with any interest thereon which would have been recoverable at that date.

872 F.2d 829 (C.A. 8 1989). The Court of Appeals for the Eighth Circuit in *Hanna*, relying on *Bruning*, held that post-petition interest is nondischargeable if it arises out of a nondischargeable tax liability. The Debtor argues that the Eighth Circuit's reliance on *Bruning* is erroneous, based upon the following contentions:

(1) The *Bruning* rationale fails to take into account the fundamental "fresh start" concept of the Code, which in spirit is inconsistent with the application of post-petition interest; and

(2) The Code itself provides for the dischargeability of post-petition interest.

The Debtor's second contention relies on §§ 727(b) and 502(b)(2). Section 727(b) states:

§ 727. Discharge

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

Section 502(b)(2) states:

§ 502. Allowance of claims or interests.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(2) such claim is for unmatured interest;

The Debtor maintains that the application of §§ 727(b) and 502(b)(2) result in the discharge of post-petition interest on priority nondischargeable claims upon the entry of the Discharge Order. The Debtor's rationale is as follows:

If 727(b) provides that § 502(b) claims are deemed to have been incurred prior to the filing of the petition in Bankruptcy, and if § 502(b)(2) disallows claims for unmatured interest (which obviously must be interest incurred from the date of filing of the bankruptcy petition to the date of discharge) then the claim for unmatured interest on the priority nondischargeable *must* be discharged. (Debtor's Brief at 5).

A number of district and bankruptcy courts applying 11 U.S.C. § 502(b)(2) to post-petition interest on tax debts have held that this section renders such interest unenforceable. *See, Neier v. U.S.,* 127 B.R. 669 (D.C.Kan.1991); *Matter of Pharmadyne Laboratories, Inc.,* 53 B.R. 517 (Bkrtcy.D.C.N.J.1985); *In re Healis,* 49 B.R. 939 (Bkrtcy.M.D.Pa.1985); *In re Christian,* 25 B.R. 438 (Bkrtcy.D.C.N.M. 1982).

Each of the cases supporting the Debtor's position can be distinguished on material points of law,[7] however, this court finds the *Hanna* decision to be the most persuasive. Like the facts in the instant case, *Hanna* involved a Chapter 7 proceeding where the Debtor owed the IRS for nondischargeable tax liabilities. Contrary to Debtor's assertions, the *Hanna* court did consider § 502(b)(2) in light of § 727. *Hanna,* 872 F.2d at 830. However, the *Hanna* court, after examining Congressional intent regarding §§ 502(b)(2) and 523(a)(1), concluded that "unmatured interest is not allowed on its merits." *Id.* at 831. The court dealt expressly with the "fresh start" concept of the Code, but determined that *Bruning* still controls, stating:

Taken together, sections 502 and 523 simply demonstrate Congress' intent to codify the general principle that applied under *Bruning.* Postpetition interest is disallowed against the bankruptcy estate

---

7. *In re Healis* and *In re Christian* were Chapter 13 proceedings that never dealt with the interaction of section 727 and section 502(b)(2). Similarly, *Neier* and *Matter of Pharmadyne Laboratories* involved Chapter 11 proceedings.

under section 502. Priority tax claims remain nondischargeable for individual debtors. Under both the Act and the Code, Congress attempted to balance the interests of the debtor, creditors and the government, and in the instance of taxes and interest on such, Congress has determined that the problems of financing the government override granting debtors a wholly fresh start. H.R.Rep. No. 595, 95th Cong., 2d Sess. at 274 (1978), *reprinted in* 1978 U.S.Code.Cong. and Admin.News. 5963, 6231. Thus, postpetition interest is nondischargeable, and the Hannas remain personally liable for that interest subsequent to bankruptcy proceedings.

*Id.* at 831.

The *Hanna* rule was quickly adopted by the Eleventh Circuit in *In re Burns,* 887 F.2d 1541 (C.A. 11 1989), where the court stated that:

> In *Hanna,* the Eighth Circuit thoroughly analyzed congressional intent regarding the *Bruning* rule, concluding that Congress did not intend to change the pre-Code law. *See* 872 F.2d at 830–31. We concur in the *Hanna* analysis and, in lieu of filling the tomes that record appellate opinions with a repeat of its proofs, we adopt that analysis as our own. Inasmuch as we conclude that the post-petition interest on a nondischargeable tax debt is nondischargeable, the rulings of the courts below must be reversed.

*In re Burns,* 887 F.2d at 1543.

Other courts have also ruled that post-petition interest on nondischargeable tax debts is itself nondischargeable. *See, In re Cline,* 100 B.R. 660 (Bkrtcy.W.D.N.Y.1989); *In re Mitchell,* 93 B.R. 615 (Bkrtcy. W.D.Tenn.1988); *U.S. v. Benson,* 88 B.R. 210 (W.D.Mo.1988); *In re Stine,* 81 B.R. 641 (Bkrtcy.N.D.Fla.1988); *In re Geving,* 93 B.R. 742 (D.C.Wyo.1986).

Accordingly, this court holds that the Debtor remains liable for post-petition interest on nondischargeable tax liabilities and penalties as assessed by the IRS.

An appropriate Order is attached.

## ORDER OF COURT

AND NOW, this 15 day of December, 1992, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1. The "non-trust fund" portions of the Debtor's IRS Form 941 tax liabilities for the fourth quarter of 1980, the first, second and third quarters of 1981, all four quarters of 1982, and the first quarter of 1983 were not discharged pursuant to the Debtor's May 4, 1990 bankruptcy discharge;

2. The penalties assessed by the IRS against the Debtor regarding the Debtor's IRS Form 940 tax liabilities for 1980, 1981, 1982 and 1983, and the IRS Form 941 tax liabilities for the fourth quarter of 1980, the first, second and third quarters of 1981, all four quarters of 1982, and the first quarter of 1983 were not discharged pursuant to the Debtor's May 4, 1990 bankruptcy discharge; and

3. The post-petition interest assessed by the IRS against the Debtor for all of the Debtor's nondischargeable tax liabilities, including those described above, was not discharged pursuant to the debtor's May 4, 1990 bankruptcy discharge.

At Pittsburgh, Pennsylvania.