In re Donald William NELSON and LuAnn Marlene Nelson, Debtors.

Estate of Wilma Nelson, by and through First National Bank as Personal Representative, Plaintiff,

v.

Donald William Nelson and LuAnn Marlene Nelson, Defendants.

Bankruptcy No. 99–32049.
Adversary No. 00–7014.

United States Bankruptcy Court, D. North Dakota.

Oct. 4, 2000.

Ross H. Espeseth, Bismarck, ND, for defendants/debtors.

Kevin J. Chapman, Williston, ND, for plaintiff.

## MEMORANDUM OPINION AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Complaint filed March 10, 2000, the Estate of Wilma Nelson, by and through its personal representative, the First National Bank and Trust Company of Williston, North Dakota, initiated the instant adversary proceeding seeking a determination that Debtor Donald Nelson's debt to the Estate of Wilma Nelson, as established by the November 3, 1998 Order of the District Court for Williams County, North Dakota, is nondischargeable under section 523(a)(4) of the Bankruptcy Code. The Estate of Wilma Nelson has moved for summary judgment, asserting that the aforementioned state court order establishes the elements necessary for nondischargeability under section 523(a)(4) and is entitled to collateral estoppel effect. In response, the Debtors contend that the state court order at issue is not entitled to collateral estoppel effect and that there is a material factual dispute which precludes summary judgment.

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Fed.R.Bankr.P. 7056. Summary judgment is appropriate if, "assuming all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane),* 124 F.3d 978, 981–82 (8th Cir.1997) (citations omitted). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* at 982 (citing *Crain v. Board of Police Commissioners,* 920 F.2d 1402, 1405–06 (8th Cir.1990)). Only factual disputes which may affect the outcome of a suit are sufficient to preclude summary judgment. *Ries v. Wintz Properties, Inc. (In re Wintz Companies),* 230 B.R. 848, 858 (8th Cir. BAP 1999) (citations omitted).

#### 1.

■ The Debtors contend that summary judgment is inappropriate because there is a material factual dispute as to the amount of the debt at issue. Apparently, the Debtors seek a judgment from this Court which reduces the amount of the debt previously established by the November 3, 1998 probate order in state court. However, the *Rooker–Feldman* doctrine prohibits this Court from engaging in impermissible federal appellate review of state court determinations. *See Hatcher v. U.S. Trustee (In re Hatcher)*, 218 B.R. 441, 447–48 (8th Cir. BAP 1998). Moreover, as the state court probate case remains pending for lack of a final accounting and distribution, this Court believes it appropriate only to make a determination as to dischargeability, leaving any remaining disputes over the amount of the debt at issue to be tried in state court. *See Bosch v. Bumann (In re Bumann)*, 147 B.R. 44, 45 (Bankr.D.N.D.1992). With respect to the issue of dischargeability, summary judgment is appropriate because the following material facts are not in dispute.

#### 2.

The Debtors are farmers in rural North Dakota. On April 2, 1992, Wilma Nelson, the mother of Debtor Donald Nelson ("Donald"), passed away. Donald served as personal representative for the Estate of Wilma Nelson ("Nelson Estate") from April 1992 until he withdrew from that position and was replaced by the First National Bank of Williston in April 1998.

After his mother's death, Donald raised crops on his mother's land each year through 1999. On October 8, 1998, a probate hearing was held in state court regarding the estate of Wilma Nelson. On November 3, 1998, a state court probate order was filed which determined that Donald owed the Nelson Estate $53,062.16 plus interest at the annual rate of six percent from October 8, 1998 for rental of Nelson Estate farmland for the years 1992 through 1997. In addition, the state court determined that Donald owed the Nelson Estate $1,000.00 plus interest at the annual rate of six percent from March 27, 1998 for a check drawn on Nelson Estate funds that Donald issued to Western Cooperative Credit Union. Finally, the state court order specifically provided as follows:

> If Donald Nelson can provide evidence to the personal representative that he paid any other real estate taxes on estate property, he shall receive credit for such payment against this debt, but shall receive no credit for any penalties or interest paid on such taxes.

#### 3.

■ The Debtors first argue that collateral estoppel does not apply to the state court order at issue. Collateral estoppel bars relitigation in federal court of issues previously determined in state court. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir.1999) (internal quotation marks omitted; citation omitted). In determining the preclusive effect of a state court judgment, bankruptcy courts must apply the collateral estoppel law of the state from which the judgment was taken, "giving a state court judgment preclusive effect if a court in that state would do so." *Scarborough*, 171 F.3d at 641 (citations omitted). In North Dakota, the following elements must be satisfied to establish the preclusive effect of a prior judgment on the basis of collateral estoppel: (1) the issue decided in the prior adjudication must be identical to the one for which preclusion is sought; (2) the prior adjudication must have resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have been given a fair opportunity to be heard on the issue in the prior adjudication. *Baker Electric Cooperative, Inc. v. Chaske*, 28 F.3d 1466, 1475 (8th Cir.1994) (citing *Hofsommer v.*

*Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D.1992)).

The Debtors argue that none of the four elements required for collateral estoppel have been met.[1] First, they argue that there is no identity of issues because the state court was not determining the dischargeability of a debt in bankruptcy. The Court agrees that the issue of dischargeability was not before the state court. However, any factual issues relevant to the question of dischargeability that were determined by the state court are entitled to collateral estoppel effect. One such factual issue is the state court's determination that Donald farmed Nelson Estate land without paying rent during his tenure as personal representative of the Nelson Estate. This issue was necessarily decided by the state court in order to determine that Donald owed the Nelson Estate $53,062.16 for unpaid rent. Another relevant factual issue is the state court's determination that Donald misappropriated $1,000.00 from the Nelson Estate when he wrote a check drawn on Nelson Estate funds to Western Cooperative Credit Union. Again, the state court necessarily determined that this check was not issued in payment of a Nelson Estate debt when it determined that Donald was liable to the Nelson Estate for the amount of the check.

Second, the Debtors argue that collateral estoppel is inapplicable because the state court order relied upon by the Nelson Estate is not a final judgment on the merits. Based on language in the November 3, 1998 order indicating that

the amount of Donald's debt is subject to reduction for any amount of uncredited real estate taxes he paid on behalf of the Nelson Estate, the Debtors assert that the state court order of November 3, 1998 is merely an interlocutory order that may not be appealed until a final accounting and distribution terminates the Nelson Estate probate case. However, "the lack of a final accounting and petition for distribution does not always make an order or judgment in a probate interlocutory." *In the Matter of the Estate of Engvald Stensland*, 574 N.W.2d 203, 207 (N.D. 1998). Where the pending final accounting and distribution is not related to the other issues resolved by a probate court order, the lack of a final accounting and distribution does not defeat the finality of the probate court's order regarding those other issues. *See Schmidt v. Schmidt*, 540 N.W.2d 605, 607–08 (N.D.1995) ("the final accounting and distribution were not related pending claims which would defeat finality of the probate court's order resolving" the unrelated contract for deed issues).

In this case, any final accounting and distribution in the state court probate case is unrelated to the factual determinations that Donald farmed land belonging to the Nelson Estate without paying rent and misappropriated Nelson Estate funds during his tenure as personal representative. This Court concludes that the state court probate order of November 3, 1998 is a "concluding order" with respect to these issues. *See Schmidt*, 540 N.W.2d at 608

---

**1.** The Debtors cite prior case law in which this Court applied the federal collateral estoppel doctrine to state law judgments. As the Eighth Circuit made clear in *Scarborough*, however, this Court must apply North Dakota's collateral estoppel doctrine when determining the preclusive effect of determinations made by a North Dakota state court. *Scarborough*, 171 F.3d at 641. Significantly, North Dakota's collateral estoppel doctrine shares only two elements with the federal doctrine: (1) the issue decided in the prior adjudication must be identical to the one for which preclusion is sought and (2) the prior

adjudication must have resulted in a final judgment on the merits. *Compare Hofsommer*, 488 N.W.2d at 384 *with Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir. 1991). The Debtors have not alleged that the state court denied them a fair opportunity to be heard. Similarly, the Debtors do not contend that there is a lack of mutuality that bars this Court from giving the November 3, 1998 order preclusive effect. Accordingly, the Court's analysis will not touch upon those elements of North Dakota's collateral estoppel doctrine.

("We conclude that the probate court order was intended as a 'concluding order' on all issues relating to the contract for deed. Our subsequent dismissal of Gerald's attempted appeal from that order for failure to file a brief rendered the order final and res judicata of all issues therein."). Accordingly, the state court's determination of these issues is entitled to preclusive effect.

4.

Having determined that collateral estoppel applies to the state court probate order of November 3, 1998, the Nelson Estate will prevail on its summary judgment motion if the order of the probate court establishes as a matter of law the elements required for nondischargeability under section 523(a)(4) of the Bankruptcy Code. A debt for fraud or defalcation while acting in a fiduciary capacity is nondischargeable. 11 U.S.C. § 523(a)(4). Accordingly, the probate court order at issue must establish that during the time Donald served as the personal representative for the Nelson Estate, he was acting in a fiduciary capacity and that he committed fraud or defalcation.

 Whether a relationship is a fiduciary one within the meaning of section 523(a)(4) is a question of federal law. *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir.1997) (citation omitted); *E.W. Wylie Corp. v. Montgomery (In re Montgomery)*, 236 B.R. 914, 922 (Bankr.D.N.D. 1999). To meet the requirements of 11 U.S.C. § 523(a)(4), " 'the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt.' " *Cochrane*, 124 F.3d at 984 (quoting *Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir.1996)); *see also Montgomery*, 236 B.R. at 922 (citations omitted). In determining whether a fiduciary relationship arose from an express or technical trust, federal courts may consult state law. *Lewis*, 97 F.3d at 1185 (citation omitted).

 A personal representative is a fiduciary who shall observe the standards of care applicable to trustees. N.D.Cent. Code § 30.1–18–03. Until termination of the personal representative's appointment, a personal representative has the same power over the titled property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. N.D.Cent.Code § 30.1–18–11. If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust. N.D.Cent.Code § 30.1–18–12.

Section 30.1–18–11 of the North Dakota Century Code imposes a trust on the assets in a decedent's estate for the benefit of creditors and heirs with the personal representative acting as a trustee. *Cudworth v. Cudworth*, 312 N.W.2d 331, 335 (N.D.1981). "As a trustee the personal representative is governed by Chapter 59–01, N.D.C.C., in addition to the provisions of title 30.1, N.D.C.C., the Uniform Probate Code." *Id.* A trustee shall not use or deal with the trust property for the trustee's own profit or for any other purpose not connected with the trust. N.D.Cent. Code § 59–01–10. If the trustee does so, the trustee, at the option of the beneficiary, may be required to account for all profits made thereby, or to pay the value of the use of the trust property. *Id.* A personal representative breaches his fiduciary obligations by engaging in transactions with estate property wherein he obtains personal benefit. *See Thomas ex rel. Schmidt v. Thomas*, 532 N.W.2d 676 (N.D. 1995).

In this case, Donald was the personal representative of the Nelson Estate from April 1992 through April 1998. Thus, under North Dakota law, a fiduciary relationship existed between Donald and the heirs and creditors of the Nelson Estate. This

fiduciary relationship was created by the imposition of a statutory trust under § 30.1–18–11 of the North Dakota Century Code and required adherence to the same statutory obligations that govern the conduct of trustees acting pursuant to an express trust. Accordingly, during his tenure as the personal representative of the Nelson Estate, Donald was acting in a fiduciary capacity within the meaning of section 523(a)(4) of the Bankruptcy Code.

The only remaining issue is whether or not Donald's conduct as a personal representative constituted fraud or defalcation under 11 U.S.C. § 523(a)(4). A violation of N.D.Cent.Code § 59–01–10 is a fraud against the beneficiary of the trust. N.D.Cent.Code § 59–01–15. Defalcation is the misappropriation of money held in a fiduciary capacity or the failure to properly account for such funds. *Cochrane*, 124 F.3d at 984 (citation omitted); *Montgomery*, 236 B.R. at 922–23.

In this case, the state court probate order of November 3, 1998 illustrates two instances of conduct by Donald Nelson during his tenure as personal representative of the Nelson Estate that constitute fraud or defalcation within the meaning of section 523(a)(4). First, Donald farmed Nelson Estate farmland without paying rent for the privilege of doing so. In this manner, he profited from his use of Nelson Estate assets at the expense of the Nelson Estate beneficiaries. This conduct violated N.D.Cent.Code § 59–01–10 and, therefore, constituted a fraud against the beneficiaries of the Nelson Estate pursuant to N.D.Cent.Code § 59–01–15. Similar conduct has been found to be nondischargeable as a defalcation under 11 U.S.C. § 523(a)(4). *See FDIC v. Mmahat*, 907 F.2d 546, 550 (5th Cir.1990) (attorney committed a defalcation within the meaning of 11 U.S.C. § 523(a)(4) by improperly enriching himself at the expense of his client, and the resulting debt was nondischargeable). Second, Donald issued a $1,000.00 check drawn on Nelson Estate funds that was not in payment of a debt owed by the Nelson Estate. This act constituted misappropriation of funds belonging to the Nelson Estate, thereby qualifying as a defalcation. Both instances of conduct discussed above give rise to debts that are nondischargeable within the meaning of section 523(a)(4) of the Bankruptcy Code.

5.

Based on the foregoing, the motion for summary judgment is granted in favor of the Estate of Wilma Nelson. The debt established by the probate order of the District Court for Williams County, State of North Dakota, Court File No. 8353, entered on November 3, 1998, owing from Donald Nelson to the Estate of Wilma Nelson and subject to reduction by the aforementioned state court, is hereby declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4). If the Debtors wish to contest the amount of the debt which has been declared nondischargeable, they may seek reduction in the District Court for Williams County.

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

**SO ORDERED.**